(No. 39331.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* BILLY NOBLE, Appellant.

*Opinion filed May 28, 1969.*

Ward, J., took no part.

Gerald W. Getty, Public Defender, of Chicago, (Norman W. Fishman, Marshall J. Hartman, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and L. Michael Getty, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Underwood delivered the opinion of the court:

Defendant, Billy Noble, was found guilty of the murder of his wife at the conclusion of a Cook County circuit court jury trial and sentenced to a term of 20-50 years imprisonment. He appeals directly here contending the trial court's refusal to permit him to consult with counsel during an overnight trial recess deprived him of the effective assistance of counsel in violation of the sixth amendment to the United States constitution. While that is the constitutional issue giving us jurisdiction on direct appeal, defendant additionally urges that he was improperly restricted in his defense when the trial court refused to admit testimony of an examining psychologist; that he was denied a fair trial as a result of prejudicial statements by the prosecutor and trial judge; and that he was not proved sane beyond a reasonable doubt.

We have reviewed the entire record in order to evaluate defendant's arguments relating to a fair trial and the proof as to his sanity. We do not agree that the court's questions or comments exceeded the bounds of propriety nor do we believe the statements and argument of the prosecution to have been prejudicial (*People* v. *Jones,* 29 Ill.2d 306; *People* v. *Winters,* 29 Ill.2d 74, 81; *People* v. *Riggins,* 13 Ill.2d 134, 142), and, in any event, they are unlikely to reoccur in a new trial. While the evidence on the issue of defendant's sanity at the time of the shooting is conflicting, it cannot be said that the State failed in its obligation to establish beyond a reasonable doubt that defendant was sane. The proof was sufficient, if believed by the jury, to meet that burden. (*People* v. *Le May,* 35 Ill.2d 208, 211-12.) Nor do we agree with defendant's contention that the court's direction that an examining psychiatrist could not relate conversations with defendant constituted an abuse of discretion. *People* v. *Hester,* 39 Ill.2d 489, and cases there cited.

This leaves for consideration the questions as to the denial of the assistance of counsel and the exclusion of the psychologist's testimony. Only a limited recital of the facts is necessary to an understanding and resolution of these issues. The trial extended from July 8 through July 17. The undisputed evidence established that defendant and his wife, both of whom had been married previously, had experienced a rather stormy marital history extending over a 4-year period, much of the difficulty apparently arising from decedent's extra-marital affairs. Defendant had apparently twice attempted suicide, once during his first marriage when he was 19 by cutting his wrist while an inmate of a boys' reformatory, and again, after his marriage to decedent, by slashing his throat with a razor blade after he saw decedent kissing another man.

Defendant shot and killed his wife in the culmination of a week end during which defendant's wife, his 3-year-old daughter and he were moving to a new apartment from one

which they had been ordered to vacate. Robert Meacham, a long-time friend of defendant, was assisting in the move, ostensibly because defendant's leg was broken and in a cast. Defendant was concerned about the relationship between his wife and Meacham and feared his wife would take their daughter if she left defendant for Meacham who defendant thought used narcotics. During this week end decedent had sexual intercourse with Meacham at a motel, called defendant the following morning and told him she was not returning home, spent the following night with Meacham, called defendant the next morning to see if she could get her clothes and she, Meacham, his wife and defendant then all met at defendant's apartment where considerable argument and discussion occurred. Meacham and decedent left together. The following day defendant bought a pistol. Meacham came and helped him with the moving, and later that day when defendant, his wife and Meacham were together at the apartment defendant saw decedent and Meacham kissing, and decedent thereafter told defendant she had decided to go with Meacham. Defendant then pulled the gun from his pocket and ordered Meachem to remove his shirt. (Mrs. Meacham had apparently called defendant and told him decedent had left scratches on her husband's back during their sexual activities.) Decedent approached defendant and was shot. She then ran outside while defendant and Meacham struggled; the latter took the daughter to a neighbor, and defendant followed decedent outside and there shot her in the head.

There was considerable testimony by others regarding defendant's appearance and unusual behavior during that week end. He testified that everything went "gray" after he saw Meacham and decedent kissing, and all he could hear were "funny noises" in his head; he did not remember shooting decedent outside the apartment and testified he put the barrel of the gun in his own mouth and pulled the trigger. When the police arrived defendant was crouched beside

a car trying to unjam the automatic pistol. He later gave written statements to the police relating in detail the day's events including the final shot which killed his wife.

The argument relating to denial of counsel stems from the fact that the trial court proceedings were adjourned about 5 :oo P.M., during the cross-examination of defendant, until 10 :oo A.M. the following day. At that time defendant was admonished not "to discuss his testimony with anyone including his attorney." Defense counsel protested that he had understood they would not adjourn until examination of the witness had been completed and that counsel needed to discuss certain matters with defendant before the following day. A motion for a mistrial was then denied. It is the State's position that counsel was free to discuss with defendant any aspect of the case except defendant's testimony, and therefore no error occurred. That argument is specious, for it is apparent from the colloquy between the court and counsel that any discussion between counsel and defendant must wait until "After he leaves the stand"— and we think that phrase clearly referred to the completion of defendant's testimony. The issue, then, is whether a trial court may properly enjoin consultation between a defendant and his lawyer during an overnight recess in a jury trial solely because defendant had not completed his testimony when the recess was declared. We believe it clear that such action constitutes a denial of the effective representation of counsel guaranteed by the sixth amendment to the Federal constitution.

While we are unaware of any United States Supreme Court opinion in which the issue here presented was considered, that court's concept of the sixth amendment right to counsel, as enunciated in *Gideon* v. *Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792; *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758; *Tehan* v. *United States ex rel. Shott,* 382 U.S. 406, 15 L. Ed. 2d 453, 86 S. Ct. 459; and *Miranda* v. *Arizona,* 384 U.S. 436,

16 L. Ed. 2d 694; 86 S. Ct. 1602, leaves little doubt as to its views on the facts before us. There are, however, a number of other courts which have considered the precise problem. One of those frequently cited is *United States* v. *Venuto* (3d cir.), 182 F.2d 519, where, in an income tax prosecution, the precise situation before us occurred. There the jury was excused for the day at 4:00 P.M. during the cross-examination of defendant, and the trial judge indicated defendant was not to "discuss this case with anybody", making clear that he would incarcerate defendant overnight unless defense counsel agreed not to consult with his client. The trial court action was there held to constitute a deprivation of defendant's constitutional right to consult counsel at all stages of the proceeding. In *Commonwealth* v. *Werner,* 206 Pa. Super. 498, 214 A. 2d 276, the Superior Court of Pennsylvania, and in *Commonwealth* v. *Vivian,* 426 Pa. 192, 231 A.2d 301, the Supreme Court of that State held denials of the right to consult counsel during an overnight recess and noon recess, respectively, were not constitutionally permissible, even though in *Werner* the trial court made clear to counsel the fact that he did not intend to cut off all communication between defendant and counsel but only that relating to defendant's testimony. In *Commonwealth* v. *Scoleri,* 432 Pa. 571, 248 A. 2d 295, the Pennsylvania Supreme Court again affirmed its position, although there holding Scoleri could not challenge the ruling on appeal since he had not objected in the trial court.

The Supreme Court of Mississippi considered the same issue in the context of a trial court admonition prohibiting discussion by defendant of "this case" with her attorneys during a two-hour recess. (*Pendergraft* v. *State,* —— Miss. ——, 191 So. 2d 830.) Its language there is apposite here. "The right to an attorney extends throughout the trial and to every stage of the proceeding. We need not look to the specific prejudice that resulted to the defendant as a result

of the two-hour court-imposed restriction of consultation between the accused and her attorney. This particular phase of the trial is so critical that we do not attempt to envision a particular prejudice such as an overlooked fact, further discussions of strategy, or whether it be merely reassurance to the defendant. We deem it reversible error that the right of consultation granted by the Constitution was denied." 191 So. 2d at 833; *Tate v. State,* —— Miss. ——, 192 So. 2d 923, 925.

The annotation in 46 A.L.R. 2d 517, supplemented at 5 A.L.R. 3d 1386, summarizes the decisions in this manner: "Regardless of any right of the court in its discretion to direct other witnesses not to discuss the case with anyone during a recess or the like, the view in the majority of the few cases considering the question seems to be that, as regards consultation between party-witnesses and their counsel during a recess in the course of the examination of any party-witness, the right to prohibit consultation which might otherwise exist must give way to the greater right of free consultation between a party and his counsel."

While the State on this appeal urges that we should require a showing by defendant of specific prejudice resulting from the denial of consultation before holding such denial constituted reversible error. (see *United States* v. *Leighton* (2d cir.), 386 F.2d 822), we believe this contention adequately answered by a statement in *Glasser* v. *United States,* 315 U.S. 60, 76, 86 L. Ed. 680, 702, 62 S. Ct. 457, 467: "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

Although this case must be remanded for a new trial, we do not mean to imply by this decision that a trial court may never, under any circumstances, impose limited restrictions on a defendant's freedom to consult with counsel. (See

*Commonwealth* v. *Christman,* 432 Pa. 455, 247 A. 2d 451.) Certainly a trial judge must be accorded a sufficient discretion in this respect to enable him to maintain decorum and enforce an orderly trial procedure. We do not believe, however, that such right of restriction, necessary to the orderly conduct of the trial itself, may be extended to recesses in that trial unless it would be under most exigent circumstances not ordinarily present. See *Commonwealth* v. *Scoleri,* 248 A. 2d 295, 298.

Since this case must be retried, it is necessary that we examine the propriety of denial of the offer of proof involving the testimony of Dr. Alvin Gurstein, a clinical psychologist. He testified his academic training had been received at the University of Chicago from which he had a 1950 bachelor's degree,, a 1958 master's and a 1959 Ph.D. He had spent one year as a post-doctoral interne in psychology at Billings Hospital at that university, and three years at the University of Michigan where he taught clinical psychology, psychological testing, psycho-pathology and related courses. Since leaving the University of Michigan he had been assistant professor of psychology in the Department of Psychiatry at the University of Illinois. There he worked with medical students, psychiatric residents and clinical psychologists in training, in addition to performing psychological testing and other forms of direct service work with patients at the hospital. He is a registered psychologist pursuant to our statute. (Ill. Rev. Stat. 1967, chap. 91½, par. 410.) As of September, 1964, he would be director of clinical training in psychology in the University's Department of Psychiatry.

Dr. Gurstein further testified that he was requested by Dr. Israel, a psychiatrist employed by defendant, to perform certain psychological tests upon defendant, evaluate the results of such tests and make a report of those results to Dr. Israel; that pursuant to this request Dr. Gurstein did give defendant a revised Bender Visual Motor test, a

Rorschach test and a Tehmatic Apperception test; and that he evaluated the results of these tests and gave a report to Dr. Israel as requested. Dr. Israel testified that, to a psychiatrist, "Psychological tests are a laboratory examination to aid the doctor in making an examination for his diagnosis, just like a blood count" or "an X ray", and "They are used all the time" in the practice of psychiatry.

The proof offered and rejected would have involved a description of the tests given, the procedure used, and Dr. Gurstein's opinion that the results of the tests indicated defendant "would act compulsively"; that he "would not be aware of the things that were happening to him"; and that he was not "a sociopath" (one whose anti-social behavior is undertaken with an awareness of reality and an understanding of the significance of his acts). Neither Dr. Gurstein nor Dr. Israel was permitted to testify as to these matters, and Dr. Israel was compelled to exclude from his opinion of defendant's condition any consideration of the results of the psychological testing.

The question as to whether psychologists may testify as experts on questions relating to mental problems is one upon which courts are not in agreement. A number of the cases dealing with the issue are discussed in 78 A.L.R.2d 919, and a supplement thereto in A.L.R. 2d Later Case Service, p. 496, and it seems clear that the trend of the more recent decisions is to permit a properly qualified psychologist to testify as to the nature and results of psychological tests administered by him, particularly where those tests have been performed at the request of a psychiatrist and for the purpose of use by the latter in diagnosing an individual's mental condition. (*Hidden* v. *Mutual Life Ins. Co.* (4th cir.), 217 F.2d 818; *People* v. *Hawthorne*, 293 Mich. 15, 291 N.W. 205; *In re Masters*, 216 Minn. 553, 13 N.W.2d 487; 158 A.L.R. 1210; *Watson* v. *State*, 161 Tex. Crim. 5, 273 S.W. 2d 879; *State* v. *Donahue*, 141 Conn. 656, 109 A. 2d 364; *State* v. *Padilla*, 66 N.M. 289, 347 P.2d 312; *People* v.

*Davis,* 44 Cal. Rptr. 454, 402 P.2d 142; *People* v. *Pennington,* 66 Cal. 2d 508, 58 Cal. Rptr. 374, 426 P.2d 942; *Carter* v. *State* (Okla. Crim.) 376 P.2d 351; *Rollins* v. *Commonwealth,* 207 Va. 575, 151 S.E.2d 622; *Jenkins* v. *United States,* 113 App. D.C. 300, 307 F.2d 637; *State* v. *Tull,* 240 Md. 49, 212 A.2d 729; see, also, *Casimere v. Herman,* 28 Wis.2d 437, 137 N.W.2d 73; *Simpson* v. *Heiderich,* 4 Ariz. App. 232, 419 P.2d 362; *Blunt* v. *United States* (D.C. cir.) 389 F.2d 545; but see *State* v. *Alexander,* 252 La. 564, 211 So. 2d 650.) We note the District of Columbia Court of Appeals in *Jenkins* had the benefit of *amici* briefs from both the American Psychological and the American Psychiatric associations, and that the several opinions of the nine circuit judges there sitting *en banc* thoroughly explore the various arguments.

The substantially more perplexing problem, however, is whether any psychologist is qualified to diagnose the existence and nature of a mental disease and whether there is a causal relationship between that disease and the act complained of. Traditionally, as is indicated in a number of the cases above cited, this is an area in which the psychiatrist with his medical training has been regarded as pre-eminently qualified. However, as the public and courts have become increasingly aware of the values of psychological testing and treatment, courts have inclined to be more accepting of psychologists as experts, and, depending on the qualifications of the individual witness, to restrict or extend the scope of his testimony accordingly (see *People* v. *Davis,* 44 Cal. Rptr. 454, 402 P.2d 142; *Jenkins* v. *United States,* 113 App. D.C. 300, 307 F.2d 637; *State* v. *Padilla,* 66 N.M. 289, 347 P.2d 312,) even to the extent of permitting the expression of opinions as to the mental condition of the individual.

In this State it has been common practice for trial courts to permit qualified psychiatrists to testify as expert witnesses on the question of the mental condition of the defendant

when a defense of insanity is offered (*People* v. *Myers,* 35 Ill.2d 311; *People* v. *Le May,* 35 Ill.2d 208; *People* v. *Skeoch,* 408 Ill. 276) ; likewise, it is clear that clinical psychologists have also testified in such cases (*Myers, People* v. *Miller,* 33 Ill.2d 439, 443), apparently expressing, without objection, their opinions as to the defendant's mental condition. Dr. Israel, an obviously qualified psychiatrist, testified here that, when in his professional opinion he felt it necessary, he hired a psychologist to conduct a series of psychological tests upon the defendant and give the test results to the doctor. The results of these tests, together with examinations conducted by him, were used by Dr. Israel in formulating his diagnosis of the defendant's mental condition.

As noted earlier, the trial court severely restricted Dr. Gurstein's explanation of the procedure and purpose of the psychological tests he administered, permitting him to identify the tests but refusing to permit him to relate the test results, placing considerable reliance upon *People* v. *Jenko,* 410 Ill. 478. Furthermore, when Dr. Israel testified he, also, was prohibited from relating the results of the tests, nor was he permitted to consider the results of the tests as a basis for his diagnosis of defendant's mental condition. The trial court felt this ruling was necessary to prevent the psychiatrist from doing indirectly what the psychologist could not do directly.

However, the result of this is that a psychiatrist is considered qualified to give expert testimony on mental conditions, but a court overrides the psychiatrist's professional judgment as to the proper tools for use in diagnosing those conditions. There appears to be no support for this anomaly in either medical or legal precedent, and we believe these rulings of the trial court unnecessarily restricted the presentation of the insanity defense.

We have refused to hold that psychological tests are

necessary before a psychiatrist can be said to have made an adequate examination for the purpose of expressing an opinion of a defendant's mental capacity. (*People* v. *Myers,* 35 Ill.2d 311, 325.) But when the psychiatrist does see fit to request such tests, and relies upon their results in arriving at a final diagnosis, logic and the interests of justice dictate that the trier of fact be permitted at least some explanation of the purpose of the tests and their results. While the trial court apparently believed our opinion in *Jenko* barred Dr. Gurstein's testimony, the facts there differ substantially from those now before us. In *Jenko,* there was no apparent showing of the psychologist's qualifications nor does it appear that the testing was done at the request of a psychiatrist, and the testing occurred some 20 months prior to the commission of the offense. We note also that since *Jenko* was decided in 1952, our General Assembly in 1963 provided for the registration of psychologists (Ill. Rev. Stat. 1967, ch. 91½, pars. 401 through 427), and that the Mental Health Code (Ill. Rev. Stat. 1967, ch. 91½, par. 1—1 *et seq.*) provides for the emergency commitment of mentally retarded persons upon the certificate of a psychologist (par. 7—1), that psychologists may serve upon examining commissions (par. 9—3) in cases involving retarded individuals, and that such persons may be discharged (par. 10—1) in proceedings involving the use of psychologists. We note too, that in order to acquire a certificate of registration a psychologist must have among other requirements a doctoral degree in psychology plus 2 years professional experience. These legislative enactments indicate increasing recognition of psychology's contributions to an understanding of human behavior.

It is our opinion that Dr. Gurstein should have been permitted to testify as to the nature of the tests, the procedures followed by him in administering them and the results thereof.

We accordingly reverse the judgment of the Cook

County circuit court and remand the cause for a new trial for the reasons herein stated.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.