2024 IL App (1st) 220380
December 6, 2024

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,) | | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17 CR 13661 |
| | ) | |
| WYNDHAM LATHEM, | ) | The Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Wyndham Lathem was convicted of first degree murder following a jury trial and sentenced to 53 years with the Illinois Department of Corrections, in connection with the July 27, 2017, stabbing death of Trenton Cornell in Chicago.

¶ 2    Defendant raises numerous issues on appeal. However, we discuss only one, because it requires reversal, as we explain below. Defendant claims that he was denied access to counsel by the trial court during an overnight recess and that this denial requires reversal without a showing of prejudice. In its brief to us, the State agrees that: "An order forbidding a testifying defendant from consulting with his attorney 'about anything' during an overnight recess violates the Sixth Amendment right to the assistance of counsel."

¶ 3        However, the State argues (1) that the trial court did not completely restrict defendant's access and that its restriction was reasonable, and (2) that, in addition, defendant waived the issue.

¶ 4        The State does not argue that defendant would need to show prejudice, thereby conceding this point. Thus, if an unconstitutional denial of access occurred, reversal is required. For the reasons explained below, we find that such a denial occurred and have no choice but to reverse.

¶ 5        BACKGROUND

¶ 6        Since the facts of the offense have little to do with the facts requiring reversal, we summarize. Codefendant Andrew Warren testified that he committed the murder with defendant. Warren had pled guilty to first degree murder and appeared as a witness for the State. Contrary to Warren's testimony, defendant testified that only Warren stabbed the victim. Thus, of the three men who were present in the room at the time of the offense, two men testified and the third man was dead.

¶ 7        It is undisputed that defendant and the victim were lovers. Defendant testified that he invited codefendant Warren over for sex with him and the victim and that, while the victim was on top of defendant, Warren stabbed the victim. By contrast, codefendant Warren testified that he and defendant wanted to kill someone, and that defendant said he wanted to kill the victim.

¶ 8        The facts relating to reversal occurred after defendant completed his direct examination. After his direct examination, the trial court took a recess to speak with just the attorneys in chambers. The State renewed its motion to introduce evidence of e-chats between defendant and others about recruiting someone to be killed. The State argued that, by testifying

that he had a completely innocent frame of mind and that he did not expect codefendant Warren to act violently, defendant had placed his intent and knowledge at issue.

¶ 9 The trial court stated that, if defendant had chosen not to testify, the court would not have let this evidence in, but that the State had made a good point, and the court invited the defense to respond.

¶ 10 Defense counsel acknowledged that the court had previously said that the defense might open the door to this evidence, and counsel argued that the defense had been very careful not to do that. Second, counsel noted that the court had previously ruled that this evidence would be prejudicial and that had not changed. Third, counsel argued that this evidence was not relevant since it consisted of e-chats with other people and not codefendant Warren.

¶ 11 The trial court acknowledged that the evidence was prejudicial but noted that defendant had testified that he was totally surprised. The court said that defendant would be 'perpetrating a fraud" by saying this was "totally unanticipated" when "we have evidence to the contrary." The court then asked the State to specify what it would introduce. During the discussion that followed, the court interrupted, noted that it was 5:20 p.m., and suggested that they recess the court proceedings for the day, and the attorneys agreed.

¶ 12 Back in the courtroom, the court excused the jury for the day. After the jury left the courtroom, the following exchange occurred, which is key to the issue here:

"THE COURT: Okay. The jury is out of the courtroom. [Defendant], you are under oath. You cannot discuss anything related to this case, including your testimony with your attorneys right now.

THE DEFENDANT: I understand.

THE COURT: Do you understand that?

3

THE DEFENDANT: Yes, sir.

THE COURT: This is the exception to the rule, you're normally allowed to talk to your attorney, but since you're subject to cross-examination, I don't want you talking to them. I know the attorneys understand my ruling and they understand the reason behind my rulings. We will see you tomorrow morning."

The court then stated that the court and the attorneys would continue their discussion back in chambers. After much discussion in chambers, the court ruled on which e-chats would be admitted, and the following exchange occurred:

"MR. B. SHEPPARD [defense counsel]; Judge, may we tell the defendant what is going on in terms of—

THE COURT: No, no.

MR. B. SHEPPARD: Okay. I will not discuss his testimony.

THE COURT: He—he is under oath, you cannot discuss his testimony. I understand it puts you in a bind, guys, but I really don't see any way around this.

MR. WINE [defense counsel]: Just our objection for the record.

THE COURT: Noted."

¶ 13     Defense counsel then asked for an opportunity for a redirect examination with defendant:

"MR. WINE: Your Honor, so I—I put down the whole case relying on the Court's original ruling and thinking I did not open the door to these, and I understand the Court's ruling, but now I'd like to at least redirect or say, did you ever talk about snuff and stuff like that? Is that fantasy talk?"

The court agreed that defendant should be allowed "an opportunity to explain this." After some discussion about other matters, the case was continued until the next day, October 6, 2021.

¶ 14    On the morning of October 6, 2021, before the jury trial resumed, the following exchange was held:

"THE COURT: Wyndham Lathem. We have the parties present. You can sit down there right now. So we have [defendant] here. You want to put something on the record, Defense?

MR. WINE: I do. So last night when the direct was finished and the day ended the court ordered the defense attorneys for [defendant] not to speak to [defendant] and we haven't done that. We made an objection at that time and we're renewing our objection this morning that not being able to speak to our client from the time he was finishing up his testimony last night until—

THE COURT: Keep your voice up, Ken, I'm having trouble hearing you.

MR. WINE: Sorry, your Honor. I'm making an objection for the record, we want to be able to speak to our client between his direct and cross and I believe he was unaware when he was left without counsel and we are objecting to that, that's all.

THE COURT: State, do you have a response?

MR. ENGEBRETSON: Just specifically to the fact that there was—we re-visited the motion *in limine* in between the direct and cross examination, prior to the defendant taking the stand on previous court dates[,] we made the defense aware, it was reported during the hearing that we would be re-visiting this issue during that

break so defense was aware and could have spoken to their client about these issues prior to him taking the stand.

THE COURT: Okay.

MR. WINE; One last objection which is that while we were arguing that motion [defendant] was not present.

THE COURT: Let's make one thing perfectly clear, [defendant] is currently on the witness stand, for us to be talking with regard to his testimony and have him present at the sidebar I think would be defeatist. I think that would be the only time that [defendant] should not be present at a sidebar when we are discussing—when he is under oath and we are discussing issues regarding his testimony.

After the direct examination there was—the [S]tate entered—asked me to re-evaluate a motion *in limine* that I granted in this matter. I did in fact change my ruling to some regard on this and some things that may not have been relevant before, I said the [S]tate can inquire into that or at least go forward with that information. With regard to the fact that you did not have an opportunity to discuss my ruling with [defendant] I understand that however I don't see how you can talk to your witness when he is under oath subject to cross examination, that would not be right. It would not be right for a [S]tate witness, it would not be right for a defense witness and frankly it would not be right for the defendant.

As I told you before, Mr. Wine, if you want to lead—if you want to address the matter that I ruled on, if you want to lead your client because he may be surprised on this, I will allow you to do that, I will overrule any [S]tate's objection with regard to leading the witness but I believe now it is relevant. Is there anything else?"

The State then alerted the court that it anticipated one more ruling on admissibility, which could be handled between defendant's cross and redirect. Defense counsel then interjected:

"MR. WINE: Your Honor, just—I don't want to belabor the point but besides what the court ordered for us not to talk to [defendant] about there are many other matters in the case obviously that we would want to talk to him about including other witnesses and closing arguments and a bunch of things you can talk to your client about while you are home for the evening, while the case is closed for the evening and then next morning so we were not able to do that, that is my record, thank you very much.

THE COURT: I'm going to lift my restriction on talking to your client after he is off the witness stand just FYI."

The trial continued, and the jury returned a verdict finding defendant guilty for the first degree murder of Cornell.

¶ 15    In defendant's posttrial motion for a new trial, defendant raised a number of arguments, including that "[t]he prohibition on contact between defense counsel and [defendant] during the 17-hour overnight recess constitutes reversible error." On January 25, 2022, the trial court held a hearing on the motion. When defense counsel argued that the court had directed counsel to have "no contact" with defendant, the trial court interjected:

"THE COURT: Okay. Well, I think I said—I instructed your client not to discuss his testimony with the attorneys. If I'm not mistaken, I told your client he is not to discuss his testimony with the attorneys. Did I not? I think that's in the—that's in the transcript."

At first, defense counsel noted: "On October 5th, you had informed him that he could not discuss his testimony with us, that's true." However, counsel then read the court's admonition to defendant into the record, and corrected himself, saying: "So with all due respect, the admonition to [defendant] was not just to not discuss his testimony. It was to not discuss, quote, anything related to the case." Defense counsel argued that, while the court could have instructed the attorneys not to coach their client, the court was not allowed to forbid all consideration of a defendant's ongoing testimony during a substantial recess.

¶ 16    The trial court ruled that it could "impose limited restrictions" in certain circumstances. The court stated:

> "THE COURT: I believe my ruling was clear, obviously the Defense does not agree that I was talking about the defendant's testimony, that he should not be prepped as to how to answer the questions on cross-examination with regard to the chats that I now ruled admissible."

As a result, the court found no violation of defendant's sixth amendment right to consult with his attorney. The court denied the rest of the claims in the motion, and the parties proceeded to sentencing. At the end of the sentencing hearing, the court imposed a 53-year sentence.

¶ 17    On March 10, 2022, defendant filed a motion to reconsider sentence, which was denied. On March 14, 2022, defendant filed a notice of appeal. On March 22, 2022, defendant filed a motion for leave to amend the notice of appeal in order to correct the date of the judgment being appealed. The notice had said March 13, and it should have said March 10. On April 19, 2022, this court granted defendant's motion to file an amended notice of appeal. This appeal followed, and briefing was completed two years later.

¶ 18                                    ANALYSIS

¶ 19        Defendant seeks reversal on a number of grounds, including that the trial court denied him access to his counsel during an overnight recess, in violation of his constitutional right to counsel. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8 ("In criminal prosecutions, the accused shall have the right to appear and defend *** by counsel ***.").[1] Generally, our standard of review for determining whether a defendant was denied effective assistance of counsel is *de novo*. *People v. Johnson*, 2021 IL 126291, ¶ 52. Defendant asserts that our standard of review for this issue is *de novo*, and the State does not dispute this point, thereby effectively conceding it.

¶ 20        The order at issue occurred after defendant's direct examination but prior to cross examination, when the trial court ordered defendant not to "discuss anything related to this case, including your testimony[,] with your attorneys." Both sides agree that an order forbidding a testifying defendant from consulting with his attorney about anything during an overnight recess violates the defendant's sixth amendment right to the assistance of counsel. In support of this rule, both sides cite *Geders v. United States*, 425 U.S. 80 (1976), *Perry v. Leeke*, 488 U.S. 272, 274 (1989) (discussing "the *Geders* rule"), *People v. Noble*, 42 Ill. 2d 425 (1969), and *United States v. Santos*, 201 F.3d 953 (7th Cir. 2000).

¶ 21        Defendant argues that, to obtain reversal, he does not need to prove prejudice from the court's order and cites in support *Noble*, 42 Ill. 2d at 431, and *Perry*, 488 U.S. at 280 (denial of access "is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally

---

[1] "[R]equirements under our State constitutional guarantee" of the right to counsel may "differ substantially from the Federal." *People v. McCauley*, 163 Ill. 2d 414, 424 (1994). "Regardless of the United States Supreme Court's current views" on the right to counsel under the United States Constitution, "the law in Illinois remains." *McCauley*, 163 Ill. 2d at 424-25. At the moment, the law on this issue under both coincides and so the result is the same.

ineffective"). Indeed, in *Noble*, 42 Ill. 2d at 431, the State had argued that the court "should require a showing by defendant of specific prejudice resulting from the denial of consultation before holding such denial constituted reversible error." Our supreme court rejected the State's argument and found reversible error based solely on the denial of access. *Noble*, 42 Ill. 2d at 431. The court found that the State's argument was "adequately answered by a statement in *Glasser v. United States*, 315 U.S. 60, 76 *** (1942): 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' " *Noble*, 42 Ill. 2d at 431. In the case at bar, the State does not argue that prejudice is needed, thereby forfeiting this argument and effectively conceding the point.

¶ 22 While the State agrees that a denial of access in violation of the *Geders* rule violates the sixth amendment, and while the State effectively concedes that no prejudice must be shown, the State argues that reversal is not required here because (1) the trial court did not completely restrict defendant's access and the trial court's restriction was reasonable and (2) defendant waived the issue. We discuss each argument in turn.

¶ 23 The State's first argument contains two parts: a factual argument and a legal argument. Factually, the State argues that the trial court forbid only discussions of defendant's testimony. Legally, the State argues that forbidding counsel from discussing defendant's testimony, during an overnight break in that testimony, did not violate the *Geders* rule. Neither the State's factual argument nor its legal argument are persuasive.

¶ 24 The State agrees, as it must, that an order forbidding discussions " 'about anything' " violates the sixth amendment. *Gedders*, 425 U.S. at 91. The *Gedders* court stated, unequivocally: "We hold that an order preventing petitioner from consulting his counsel

'about anything' during a 17-hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." *Gedders*, 425 U.S. at 91.

¶ 25     What *Gedders* stated in its holding is exactly what happened here. Just as in *Gedders*, there was an overnight recess between a defendant's direct and cross examination, and the trial court forbid the defendant from discussing "anything" with counsel during it. In the case at bar, the trial court told defendant: "You cannot discuss anything related to this case, including your testimony with your attorneys right now." The trial court emphasized that, "since you're subject to cross-examination, I don't want you talking to them."

¶ 26     The State argues, first, that the court limited its prohibition by saying "including your testimony." However, the word "including" is simply not, by any stretch of the imagination, a limiting word. It is the opposite of a limiting word. "Including" is a preposition that means "containing as part of the whole being considered." Google Dictionary, https://www.google.com (search "definition including") (last visited Dec. 2, 2024) [https://perma.cc/2AHA-2WGX]; *Mutlu v. State Farm Fire & Casualty Co.*, 337 Ill. App. 3d 420, 428 (2003) (citing a similar dictionary definition). Thus, according to common parlance, "your testimony" was just part of the whole being considered, and prohibited, by the trial court.

¶ 27     This common meaning of the word is in accord with its legal meaning as well. Article 2 of the Criminal Code of 2012 contains "General Definitions." 720 ILCS 5/art. 2 (West 2020). Section 2-10 states: " 'Includes' or 'including' means comprehending among other particulars, without limiting the generality of the foregoing word or phrase." 720 ILCS 5/2-10 (West 2020); *People v. Perry*, 224 Ill. 2d 312, 328-30 (2007) (reversing an appellate court case that had

interpreted "including" as a limiting word) Thus, the trial court referred to defendant's testimony without limiting the generality of the foregoing prohibition.

¶ 28    Second, the State argues that the trial court "clarified" its ruling by stating to defendant: "This is the exception to the rule, you're normally allowed to talk to your attorney, but since you're subject to cross-examination, I don't want you talking to them." This statement did not convey that the court's prohibition was restricted but rather conveyed an absolute ban, namely: "I don't want you talking to them."

¶ 29    Third, the State argues that the court "narrowed" its prohibition by answering "No, no" when defense counsel asked if he could inform defendant of the court's recent evidentiary ruling. Rather than narrow, the court's response indicated how broad the prohibition was, including not only defendant's testimony but also the court's reversal of its prior evidentiary ruling.

¶ 30    Lastly, the State argues that discussions by counsel the next morning indicate the attorneys' understanding that the court's prohibition was directed only to discussion of defendant's upcoming testimony. However, the next morning, defense counsel stated that "the court ordered the defense attorneys for [defendant] not to speak to [defendant] and we haven't done that." Defense counsel objected to their "not being able to speak to our client from the time he was finishing up his testimony last night until" his upcoming cross examination that morning.

¶ 31    On appeal, the State points to the fact that the assistant state's attorney argued, on that morning, that the State had told the defense that it intended to revisit the evidentiary issue and, so, defense counsel could have prepared its client, anticipatorily, for an adverse result.

The State argues that this shows the State's understanding that the court's ruling was limited to prepping defendant for cross examination.

¶ 32    However, the court stated: "I don't see *how you can talk to your witness* when he is under oath subject to cross examination, that would not be right." (Emphasis added.) The court stated that "[i]t would not be right for a state witness, it would not be right for a defense witness and frankly it would not be right for the defendant." The court's list indicates no awareness that the rights of a defendant are different from the rights of a state witness or a defense witness. *Noble*, 42 Ill. 2d at 431 (the right to prohibit consultation that might otherwise exist must give way to the greater right of free consultation between a defendant and his counsel).

¶ 33    Defense counsel responded:

"Your Honor, just—I don't want to belabor the point but besides what the court ordered for us not to talk to [defendant] about there are many other matters in the case obviously that we would want to talk to him about including other witnesses and closing arguments and a bunch of things you can talk to your client about while you are home for the evening, while the case is closed for the evening and then next morning *so we were not able to do that*[.]"

In the above paragraph, counsel indicated that, in addition to the court's concern about prepping defendant for cross, there were many other matters for counsel and defendant to talk about, and they were not able to do that. In response, the court did not disagree but said instead: "I'm going to lift my restriction on talking to your client after he off the witness stand just FYI." The court thereby—once again—indicated that its restriction was a complete ban "on talking to your client."

¶ 34    In *Noble*, 42 Ill. 2d at 429, the State argued that "counsel was free to discuss with defendant any aspect of the case, except defendant's testimony." The court found this argument "specious," because "it [was] apparent from the colloquy between the court and counsel that any discussion between counsel and defendant must wait until 'After he leaves the stand ***.' " *Noble*, 42 Ill. 2d at 429. Similarly, in the case at bar, the State's factual argument is not persuasive where the trial court stated, among other things, that the ban was to last until defendant was "off the witness stand."

¶ 35    Due to the trial court's repeated references to a ban on counsel's ability to talk with their client—directed to both counsel and defendant—the State's argument of only a partial ban is not factually supported by the record. We recognize that, in response to defendant's posttrial motion and citation of the relevant case law, the trial court stated: "If I'm not mistaken, I told your client he is not to discuss his testimony with the attorneys. Did I not? I think that's in the—that's in the transcript." However, what governs is not what the trial court hoped it said in retrospect but what the transcript reflects it said at the time.

¶ 36    In addition to being factually unpersuasive, the State's argument is legally unpersuasive as well. The State argues that the trial court could impose a blanket prohibition on discussion of defendant's testimony, and that is incorrect, as shown below by our chronological discussion of the relevant Illinois and U.S. Supreme Court case law.[2]

¶ 37    Starting first with *Noble*, the Illinois Supreme Court held that, when a trial court bars consultation between a defendant and his lawyer during an overnight recess in a jury trial solely because the defendant had not yet completed his testimony, that action violated the

---

[2] The State cites a couple of out-of-state cases. However, we see no need to reach out to other jurisdictions when there is so much relevant and governing case law in our own jurisdiction and from the U.S. Supreme Court.

defendant's constitutional right to counsel, thereby requiring a reversal without a showing of prejudice. *Noble*, 42 Ill. 2d at 429, 431. The Illinois Supreme Court found that, during the day, a trial court could impose a limited restriction on a defendant's right to consult with counsel, *if* such a restriction was necessary to "maintain decorum" and "orderly trial procedure." *Noble*, 42 Ill. 2d at 432. However, the court found that a restriction could be extended to an overnight recess only under "exigent circumstances not ordinarily present." *Noble*, 42 Ill. 2d at 432. In the case at bar, defendant's continuing examination, like the defendant's continuing examination in *Noble*, did not qualify as an exigent, atypical circumstance justifying a restriction.

¶ 38    A few years later, in *Geders*, the United States Supreme Court found that the order before it, "preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct- and cross-examination[,] impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." *Geders*, 425 U.S. at 91.

¶ 39    The *Geders* court observed:

"To the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper 'coaching,' the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel." *Geders*, 425 U.S. at 91.

¶ 40    The *Geders* court noted that there were "other ways to deal with the problem of *** 'coaching' " other than placing limits on the defendant's right to consult with his counsel. *Geders*, 425 U.S. at 89. As examples, the court noted that effective cross-examination could expose coaching which could then be used to advantage in closing argument and that the trial

court could schedule the defendant's testimony to avoid the problem in the first place. *Geders*, 425 U.S. at 89-91. However, as already noted, to the extent that a fear of coaching remained, any conflict had to be resolved in favor of defendant's access to counsel. *Geders*, 425 U.S. at 91; *Noble*, 42 Ill. 2d at 431.

¶ 41     In sum, while the holding in *Geders* concerned the order before it which had a complete ban, the *dicta* in *Geders* indicated that a fear of coaching should be handled by means other than a restriction on counsel and that, in any event, such a fear had to give way before the defendant's right to consultation—which did not happen in the case at bar.

¶ 42     The State cites *People v. Stroner*, 104 Ill. App. 3d 1, 5 (1982), *aff'd in part & reversed in part on other grounds by People v. Stroner*, 96 Ill. 2d 204 (1983), for the proposition that a trial court may impose "reasonable restrictions." However, that case involved a half-hour recess and so is completely inapposite to the case at bar.

¶ 43     Like *Stroner*, the recess in *Perry* also concerned a 15-minute recess, thereby making it inapposite to the case at bar. *Perry*, 488 U.S. at 274. However, in *dicta*, the Supreme Court reaffirmed that, under the *Geders* rule, a defendant during an overnight recess had a "right to unrestricted access to his lawyer for advice on a variety of trial-related matters." *Perry*, 488 U.S. at 284. The court further observed: "The fact that such discussions will inevitably include some consideration of the defendant's ongoing testimony does not compromise that basic right." *Perry*, 488 U.S. at 284. In other words, the inevitability of coaching did not justify a compromise or restriction on defendant's "right to unrestricted access." *Perry*, 488 U.S. at 284.

¶ 44     The State cites *People v. Knox*, 241 Ill. App. 3d 205, 215 (1993), for the proposition that a trial court may limit counsel from discussing a defendant's testimony during an

overnight recess. However, that case was decided primarily on counsel's failure to object to the restriction at the time it was imposed. *Knox*, 241 Ill. App. 3d at 215. As further support for its decision not to reverse, the appellate court noted that the restriction was minimal, because the defendant had already completed both his direct and cross examination, so that his testimony "could not be significantly altered." *Knox*, 241 Ill. App. 3d at 215. Ironically, it was defendant's inability to alter his testimony, not a fear of coaching, that led the appellate court in *Knox* to affirm. Obviously, our case is different than *Knox*, because the defendant here still had his cross examination ahead of him, with more opportunity to alter and explain than the defendant in *Knox*.

¶ 45        Last but not least is *Santos*, where the defendant's direct examination was completed in the afternoon, and her cross examination was scheduled for the next morning, and the trial court instructed defense counsel that his client's testimony " 'should not be the subject of further inquiry with counsel" during the overnight recess, although that did " 'not mean to say you cannot converse with your client regarding strategy, the calling of witnesses, and so on." *Santos*, 201 F.3d at 965. In other words, the trial court imposed the type of restriction that the State argues on appeal would be a reasonable restriction.

¶ 46        The Seventh Circuit reviewed the existing precedent and, based on it, found that, "while the judge may instruct the lawyer not to coach his client, he may not forbid all 'consideration of the defendant's ongoing testimony' *** [citation], since that would as a practical matter preclude the assistance of counsel across a range of legitimate legal and tactical questions, such as warning the defendant not to mention excluded evidence." *Santos*, 201 F.3d at 965. This concern would apply equally to warning the defendant about excluded

17

evidence that would now be admitted—something the trial court in the case at bar specifically forbid defense counsel from doing.

¶ 47    These cases establish that any restriction during an overnight recess should be the exception and not the rule and given in only exigent and unusual circumstances, and that defendant's right to unrestricted access must prevail over any fears of coaching, which should be addressed through exposure on cross-examination or through scheduling. While an instruction by the trial court not to coach may withstand scrutiny, our precedent forthrightly acknowledges that coaching is inevitable and finds that it does not justify imposing a limit during an overnight recess on defendant's access to counsel, including consideration of defendant's upcoming testimony. Thus, we are not persuaded by the State's legal argument that a ban on discussion of defendant's testimony during an overnight recess was permissible. In addition, we found that the actual ban was much broader in this case, as did our supreme court in *Noble* when faced with a similar factual argument. *Supra* ¶ 34. As a result, we find neither the State's factual nor legal argument persuasive.

¶ 48    Last but not least, the State argues that the defense waived this issue by failing to object in a timely matter in the court below. To preserve an issue for appellate review, a defendant must object both at the time and subsequently in a posttrial motion. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). The State does not claim that defendant failed to raise the issue posttrial—nor could it, in light of defendant's fully argued posttrial motion, followed by the trial court's posttrial ruling.

¶ 49    The defense also made a timely objection during trial. After the trial court ruled to admit certain e-chats and before the parties adjourned for the evening, defense counsel asked if he could "tell the defendant what is going on in terms of—." But the trial court cut him off,

indicating how broad the ban was, such that the court did not even have to hear the specifics of the defense objection. The trial court simply interjected: "No, no." Responding to the emphatic "[n]o, no," defense counsel indicated he would abide by the court's order saying, "Okay, I will not discuss his testimony." After the court reiterated that counsel "cannot discuss his testimony," counsel ended this short colloquy with "our objection for the record." Counsel's immediate objection left no doubt that he was objecting to the trial court's ban on telling his client about the court's evidentiary ruling, the court's ban on discussing defendant's testimony, and the court's general ban on "tell[ing] the defendant what is going on."

¶ 50        Defense counsel renewed his objection the following morning,[3] and the State acknowledges that this objection was sufficiently specific,[4] but it claims that this objection came too late, since the overnight recess was over. However, defendant's cross examination had yet to begin, and still the court made no move to ameliorate the denial by allowing counsel access to his client at that time. See *Geders*, 425 U.S. at 91 ("courts must frequently sit through and beyond normal recess; convenience occasionally must yield to concern for the integrity of the trial itself"). An elongated recess is better than a denial of rights. Thus, we do not find the State's waiver argument persuasive.

¶ 51                                CONCLUSION

¶ 52        For the reasons already explained above, we do not find persuasive the State's arguments (1) that the trial court did not completely restrict defendant's access and that its restriction was reasonable and (2) that, further, defendant waived the issue. Instead, we find

---

[3]In this way, our case is different from *Knox* cited by the State, where the appellate court noted that "[t]he following day, defense counsel did not mention the order." *Knox*, 241 Ill. App. 3d at 215.
    [4]The State's brief states that the objection was "specific" and "mirroring *Geders*."

19

(1) that the court did completely restrict defendant's access; (2) that the partial restriction, which the State claimed was imposed, would not have been reasonable; and (3) that defendant objected in a timely manner at trial, both when the overnight recess began and before it ended the next morning.

¶ 53        Due to the trial court's order forbidding a testifying defendant from consulting with his attorney during an overnight recess in violation of his right to counsel, and our crystal-clear and consistent precedent on this issue, we have no choice but to reverse and remand for a retrial. As heinous as murder is, these rights are crucial to the effective administration of justice.

¶ 54        Reversed and remanded.

*People v. Lathem*, **2024 IL App (1st) 220380**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-13661; the Hon. Charles P. Burns, Judge, presiding. |
| **Attorneys for Appellant:** | Adam Sheppard and Barry Sheppard, of Sheppard Law Firm, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Joseph Alexander, and David H. Iskowich, Assistant State's Attorneys, of counsel), for the People. |