THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD McDARRAH, Defendant-Appellant.

Second District   No. 2—87—0041

Opinion filed October 6, 1988.

286

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Edward T. McDarrah, was found guilty by a jury in the circuit court of Du Page County of two counts of home invasion (Ill. Rev. Stat. 1985, ch. 38, par. 12—11(a)(2)), and one count each of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(4)), aggravated kidnaping (Ill. Rev. Stat. 1985, ch. 38, par. 10—2(a)(3)), kidnaping (Ill. Rev. Stat. 1985, ch. 38, par. 10—1(a)(1)), and aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(10)). Defendant asserted an insanity defense at trial. The trial court entered judgment on the verdicts and, following a sentencing hearing in which the State presented evidence that defendant qualified as a habitual offender under the Habitual Criminal Act (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1 *et seq.*), sentenced defendant to concurrent terms of natural life imprisonment on the home invasion and aggravated criminal sexual assault convictions, 30 years' imprisonment on the aggravated kidnaping conviction, and 10 years' imprisonment on the aggravated battery conviction. The court found that defendant's conviction for kidnaping was a lesser included offense of his conviction for aggravated kidnaping and did not sentence him on the kidnaping conviction. Defendant's post-trial motion was denied, and this appeal ensued.

The following issues are raised on appeal: (1) whether the trial court erred in failing to qualify a defense witness as an expert for purposes of rendering an opinion on defendant's mental state and in subsequently refusing to permit that witness to give a lay opinion on defendant's mental state; (2) whether the Illinois statute requiring defendant to prove the defense of insanity by a preponderance of the evidence and further requiring the jury to be instructed that it must find defendant guilty beyond a reasonable doubt before considering whether defendant met his burden of proving insanity violates defendant's right to due process; (3) whether the trial court erred in refusing to allow defendant to speak last in closing arguments; (4) whether the trial court erred in failing to give on its own motion an instruction of guilty but mentally ill; (5) whether the Habitual Criminal Act under which defendant was sentenced is unconstitutional; (6) whether defendant can properly be convicted of both aggravated criminal sexual assault and aggravated kidnaping where the offenses are aggravated by each other; and (7) whether defendant can properly be convicted of two counts of home invasion where he entered only one dwelling.

We affirm in part, vacate in part, and remand this cause for sentencing on the kidnaping conviction.

Defendant and the principal victim, Marlene Lindemann, lived together for the majority of 1985 in Marlene's home. According to Marlene, defendant was an excessive drinker and there was pressure from both parties' families that the couple end their relationship. As a result of that pressure, defendant moved out of Marlene's home at her request sometime at the end of February 1986. The couple continued their relationship for a brief period until Marlene told defendant that she was seeing other men.

On May 4, 1986, Marlene was at her home with her two children and her mother, Cecilia Lindemann. At approximately 3 a.m., Marlene thought she heard her doorbell, but upon investigation found no one there and returned to bed. Approximately one-half hour later, the doorbell rang again, and Marlene went to the telephone in the kitchen to call the police. At that moment, defendant "crashed" through a sliding glass door in the kitchen and ordered Marlene to hang up the telephone. Cecilia Lindemann entered the kitchen and asked Marlene if she was okay. Defendant advised her that he just came to talk. Defendant ordered Marlene into the living room and Cecilia and Marlene's children into their bedrooms. Once in the living room, defendant and Marlene began to talk. At some point defendant attempted to strike Marlene, but missed and hit the wall instead. Cecilia subsequently entered the living room and told defendant not to hit Marlene. Defendant struck Marlene in the face and also struck Cecilia. A struggle ensued during which defendant struck both women again. Defendant then took Marlene by force to his car, which was parked on a neighboring street.

Upon reaching defendant's car, defendant forced Marlene into the backseat and instructed her to lie on the floor. Defendant's brother appeared and attempted to stop defendant from driving away, but was not successful. After driving for a brief period, defendant stopped the car and tied Marlene's hands behind her back. Defendant resumed driving, and Marlene pleaded with him to take her home. Defendant stopped the car a second time, exited for a few minutes, and continued driving. When defendant stopped the car a third time, he allowed Marlene to exit, untied her hands, and permitted her to relieve herself in a field. He then instructed Marlene to return to the car, stating that the police would arrive shortly and that she should be flattered that he would do something like this for her.

Marlene returned to the backseat of the car, and defendant instructed her to remove her clothes. Defendant entered the backseat, unzipped his trousers, and instructed Marlene to rub his penis and place it in her mouth and vagina. Defendant was unable to ejaculate

and instructed her to again place his penis in her mouth. Defendant finally ejaculated after getting on top of Marlene. Defendant then took Marlene to the home of her sister and released her. According to Marlene, defendant did not appear to be intoxicated at the time of these incidents.

Defendant was arrested at approximately 7 a.m. after being observed on foot near a Glendale Heights restaurant. At the time of his arrest, defendant's speech was not slurred, he did not stagger, and he did not appear to be intoxicated or under the influence of drugs. Defendant was charged by indictment with two counts of home invasion, two counts of aggravated criminal sexual assault, and one count each of aggravated kidnaping, kidnaping, and aggravated battery.

At trial, defendant's sister testified that defendant became very depressed and experienced extreme mood swings after Marlene terminated their relationship. She further testified that defendant was obsessed with reconciling with Marlene and became withdrawn when told that she was seeing other men.

Caroline Clements was called to testify on defendant's behalf as an expert witness on defendant's mental state. Clements received a master's degree in clinical psychology from Northwestern University in June 1986, and was a Ph. D. candidate at that institution. Clements had previously served in three internships, each of a one-year duration, at Evanston Hospital, Illinois Masonic Medical Center, and the Illinois State Psychiatric Institute. Clements testified that as a result of her internships and subsequent employment as a clinical psychologist with the Illinois State Psychiatric Institute, she had psychologically tested and diagnosed "thousands" of people. Clements also testified that she instructed courses in psychopathology at Northwestern University, and authored chapters on depression for several books as well as an article for the American Psychological Association. On cross-examination, Clements admitted that she was not a registered clinical psychologist in the State of Illinois and did not possess the requisite six years of active practice for that designation. Clements testified that she had five years of supervised experience. Clements further stated that she conducted a 3½-hour interview with defendant in July 1986, approximately one month after receiving her master's degree, had never examined a criminal defendant before, had never testified in a criminal trial, and had never been qualified as an expert in psychology or psychiatry by any judge. After defendant tendered Clements as an expert witness, the court ruled that she was not qualified to give an expert opinion on defendant's mental state and could not give such an opinion as a lay witness. However, the court did per-

mit her to testify regarding the results of psychological tests performed on defendant. Clements characterized defendant as someone who regards women as objects, is delusional, and who believes that he can magically communicate with women through his thoughts. Clements stated that at the time of the interview, defendant was suffering from a mixed personality disturbance comprised of antisocial and passive-aggressive behaviors. He was also experiencing delusions of jealousy and thought broadcasting. Clements testified on cross-examination that defendant was not psychotic, that he was oriented, that his general mental processes were intact, and that his memory was not impaired. Clements further stated that defendant was of normal intelligence, was not hallucinating, and did not appear to be suicidal. Clements also testified that defendant lied to her on several occasions and showed signs of "convenient amnesia."

Dr. Werner Tuteur testified as a rebuttal witness for the State. Dr. Tuteur was qualified as an expert in the field of psychiatry. Dr. Tuteur examined defendant and evaluated the incident report, interview reports, medical records, and Clements' report. According to Dr. Tuteur, defendant showed no signs of psychosis and was able to both appreciate the criminality of his conduct and conform his conduct to the law on May 4, 1986. Dr. Tuteur opined that defendant was sane at the time he committed the offenses. Dr. Tuteur further testified that defendant was not mentally ill and that he had an antisocial personality.

After the State nol-prossed one of the two counts for aggravated criminal sexual assault, the jury returned guilty verdicts on the remaining charges. Judgment was entered on the verdicts, and the case was continued for sentencing. Defendant was subsequently adjudged an habitual offender, and the court imposed sentence on all of the convictions except the conviction for kidnaping. Defendant brought this timely appeal after the denial of his post-trial motion.

■ Defendant first contends that the trial court incorrectly ruled that Clements was not qualified as an expert to render an opinion on defendant's mental state. We disagree.

Section 5—2—5 of the Unified Code of Corrections provides that "in any issue related to insanity or to mental illness, a *clinical psychologist as defined in paragraph (a) of Section 102—21 of the Code of Criminal Procedure of 1963* shall be deemed qualified to testify as an expert witness in the form of his opinion about the issue of fitness or insanity or mental illness." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—5.) Section 102—21(a) of the Code of Criminal Procedure of 1963 provides:

" 'Clinical psychologist' means a psychologist registered under the 'Psychologist Registration Act' with the Department of Registration and Education who *meets the following qualifications*:

(1) has a *doctoral degree* from a regionally accredited university, college, or professional school, and has 2 years of supervised experience in health services of which at least one year is postdoctoral and one year is in an organized health service program; *or*

(2) has a *graduate degree* in psychology from a regionally accredited university or college, *and not less than 6 years of experience as a psychologist* with at least 2 years of supervised experience in health services." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, pars. 102—21(a)(1), (a)(2).

In the instant action, although Clements identified herself as a clinical psychologist, she admitted that she was not a registered clinical psychologist nor did she meet the qualifications to become a registered clinical psychologist with the Illinois Department of Registration and Education. Clements did not have a doctoral degree nor did she possess the requisite six years of experience for a person holding a graduate degree as required by the statute. (See Ill. Rev. Stat. 1985, ch. 38, pars. 102—21(a)(1), (a)(2).) The trial court concluded that Clements' failure to qualify as a clinical psychologist under the statute precluded her from giving an expert opinion on defendant's mental state.

Defendant does not dispute the statutory definition, but rather argues that the statute merely creates a category of witnesses "about whom there can be no dispute as to testimonial competence" and does not foreclose the trial court from exercising its discretion and qualifying others who do not meet these statutory requirements. Defendant virtually ignores *People v. Manning* (1978), 61 Ill. App. 3d 558, 564, *rev'd on other grounds* (1979), 76 Ill. 2d 235, wherein the court reviewed the trial court's refusal to qualify a witness as an expert under a statute requiring clinical psychologists to be certified with the State and to possess a doctoral degree and at least two years of experience. The defendant's witness in *Manning*, like the witness in the instant action, held a master's degree and possessed approximately five years of experience. (61 Ill. App. 3d at 563.) The court held that inasmuch as she did not meet the statutory requirements, the trial court properly refused to permit her to testify as an expert. (61 Ill. App. 3d at 564.) The *Manning* decision was subsequently limited to its facts in *People v. Lewis* (1979), 75 Ill. App. 3d 560, 564; however, its holding would appear to have sufficient support in the case law pre-

ceding the statutory provisions involved in the instant action.

The statutes involved in the instant action were enacted in response to a growing trend in case law to permit psychologists to render expert opinions on mental state. (See *People v. Free* (1983), 94 Ill. 2d 378, 412; *People v. Nelson* (1980), 92 Ill. App. 3d 35, 45-46.) This trend was first recognized in *People v. Noble* (1969), 42 Ill. 2d 425, 436-37, wherein the court reversed the trial court's decision refusing to permit a psychologist to give testimony regarding the results of psychological tests he administered to the defendant. Among the factors considered by the *Noble* court was the legislature's enactment of a provision for the registration of psychologists requiring that a psychologist have, among other things, a doctoral degree in psychology and two years of professional experience. (42 Ill. 2d at 436.) The court stated that this and other legislative enactments acknowledging the role of psychologists indicated an "increasing recognition of psychology's contributions to an understanding of human behavior." (42 Ill. 2d at 436.) In recognizing the trend to permit the testimony of a properly qualified psychologist, the court expressly noted that the psychologist in that case was a *registered psychologist pursuant to the statute existing at that time.* (42 Ill. 2d at 432.) Thus, *Noble* recognized *minimum statutory guidelines* for entertaining a psychologist's testimony. Cases decided subsequent to *Noble* and since the enactment of the statutes governing the instant action similarly acknowledge the minimum statutory guidelines and permit the testimony of "qualified" psychologists. (See *Free*, 94 Ill. 2d at 412 (recognizing that the legislature enacted section 5—2—5 to permit a *qualified clinical psychologist* to testify on a defendant's mental state); *Nelson*, 92 Ill. App. 3d at 46 (concluding that the psychologist in that case was a *qualified psychologist* competent to render an opinion on the defendant's mental state and noting that section 5—2—5 confirmed that result).) Based on these authorities as well as the statutory language itself, we conclude that only a psychologist meeting the statutory requirements may be qualified to render an expert opinion on a defendant's mental state.

■■■ Defendant next contends that the trial court erred in refusing to allow Clements to give a lay opinion regarding defendant's mental state. We disagree.

As a general rule, a lay witness may give an opinion regarding the defendant's mental state where that witness has had an opportunity to observe the defendant and the opinion is based on the facts and circumstances observed. (See *People v. Eckhardt* (1987), 156 Ill. App. 3d 1077, 1096; *People v. Chatman* (1986), 145 Ill. App. 3d 648,

659.) Whether a lay witness has testified to sufficient facts and circumstances supporting his opinion is a matter within the trial court's discretion, and the trial court's decision will not be reversed absent an abuse of that discretion. (*Chatman*, 145 Ill. App. 3d at 659; *People v. Liberg* (1985), 138 Ill. App. 3d 986, 991.) Opinions of lay witnesses who have observed the defendant near the time of the offense have generally been held to have a sufficient basis for admission. (See *People v. Pruszewski* (1953), 414 Ill. 409, 412-13; *Eckhardt*, 156 Ill. App. 3d at 1098; *Liberg*, 138 Ill. App. 3d at 991; *People v. Cooney* (1985), 136 Ill. App. 3d 989, 1008-09; *People v. Teague* (1982), 108 Ill. App. 3d 891, 903-04.) Similarly, lay opinions based on observations made shortly before and after a crime are also admissible. (*People v. Gindorf* (1987), 159 Ill. App. 3d 647, 660; *Chatman*, 145 Ill. App. 3d at 659.) However, observations which are too remote in time from the crime are an insufficient basis for lay opinion. See *People v. Dunigan* (1981), 96 Ill. App. 3d 799, 820-21 (observations by the defendant's girlfriend 10 and 16 months after the crime were too remote in time to be relevant to the defendant's mental state at the time of the offense).

In the instant action, Clements' observations offered as the basis for her "lay" opinion on defendant's mental state took place in a 3½-hour interview approximately two months following the offenses. Moreover, the trial court specifically noted that she was being offered to testify in accord with her *expertise in psychology* rather than as a lay observer. The court conducted a special hearing to determine whether Clements could be offered to give a lay opinion and concluded that she could not. Given the nature of Clements' relationship to defendant, the duration of her interview with him, and the remoteness of time between the incident and interview, the record does not indicate that the trial court's ruling was an abuse of discretion.

■ Defendant next contends that section 6—2(e) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 6—2(e)), which requires defendant to prove the defense of insanity by a preponderance of the evidence, is unconstitutional because it improperly requires defendant to *disprove* the *mens rea* element of the crime. We disagree.

Section 6—2(e) provides:

"When the defense of insanity has been presented during the trial, *the burden of proof is on the defendant to prove by a preponderance of the evidence that the defendant is not guilty by reason of insanity. However, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of each of the offenses charged,* and, in a jury trial where

·the insanity defense has been presented, the jury must be instructed that it may not consider whether the defendant has met his burden of proving that he is not guilty by reason of insanity until and unless it has first determined that the State has proven the defendant guilty beyond a reasonable doubt of the offense with which he is charged." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 6—2(e).

This provision placing the burden of proving insanity by a preponderance of the evidence on defendant has been recognized in several decisions of our courts. (See *People v. Hightower* (1988), 172 Ill. App. 3d 678, 685; *People v. Martin* (1988), 166 Ill. App. 3d 428, 436-37; *Gindorf*, 159 Ill. App. 3d at 659-60; *Eckhardt*, 156 Ill. App. 3d at 1080; *People v. Moore* (1986), 147 Ill. App. 3d 881, 884-85.) In *Martin*, the court directly addressed the constitutionality of this provision and concluded that it did not violate due process. (See *Martin*, 166 Ill. App. 3d at 436; see also *Hightower*, 172 Ill. App. 3d at 682-83 (holding that section 3—2(b) placing burden of proving the affirmative defense of insanity on a defendant is constitutional).) Both *Hightower* and *Martin* relied extensively on the United States Supreme Court's decision in *Leland v. Oregon* (1952), 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002.

In *Leland*, the Court held that an Oregon statute requiring the defendant to prove the defense of insanity beyond a reasonable doubt did not violate defendant's right to due process since Oregon still required the State to first prove every element of the offense beyond a reasonable doubt. (343 U.S. at 799, 96 L. Ed. at 1309, 72 S. Ct. at 1007-08.) The Court specifically rejected the defendant's contention that the jury may have been confused between the State's burden of proving intent, in that case premeditation, and the defendant's burden of proving insanity. (343 U.S. at 800, 96 L. Ed. at 1309, 72 S. Ct. at 1008.) The Court noted that juries have historically distinguished between guilt and innocence and between criminal responsibility and insanity based upon "the facts, as revealed by all the evidence, and the law, as explained by instructions detailing the legal distinctions, the placement and weight of the burden of proof, the effect of presumptions, the meaning of intent, etc." (343 U.S. at 800, 96 L. Ed. at 1309, 72 S. Ct. at 1008.) In addressing *Leland*, the *Martin* court noted, as did the *Leland* court in addressing the statute in that case, that because section 6—2(e) requires the State to *first* prove each element of the offense charged beyond a reasonable doubt, the statute complies with the constitutional requirement that the State carry the burden of proof on each element. (*Martin*, 166 Ill. App. 3d at 436-37.)

We find that reasoning persuasive and adopt it here.

Defendant nonetheless attempts to distinguish *Leland* on the basis that the jury in that case was instructed that it could consider the defendant's evidence on insanity with all the other evidence in regard to the defendant's ability to premeditate, form a purpose, to deliberate, act willfully, and act maliciously. (*Leland*, 343 U.S. at 794-95, 96 L. Ed. at 1307, 72 S. Ct. at 1005.) Defendant argues that this instruction provided the jury with guidance on how to reconcile the "competing and mutually exclusive burdens of proof." Defendant asserts that the absence of a similar instruction in the instant action denied him due process since the jury was instructed pursuant to section 6—2(e) that it could not consider whether defendant met his burden of proving insanity by a preponderance of the evidence until it first determined that the State proved defendant guilty beyond a reasonable doubt. See Ill. Rev. Stat. 1985, ch. 38, par. 6—2(e).

We do not believe that further instruction was necessary in the instant action. Although section 6—2(e) precluded the jury from considering whether defendant *sustained his burden of proving insanity* until it first determined whether the State sustained its burden of proving all of the elements of the offense, nothing in that statute or in the instructions given in this case precluded the jury from *using defendant's evidence* to find one of the State's elements (*i.e.*, *mens rea*) missing. (See Ill. Rev. Stat. 1985, ch. 38, par. 6—2(e).) Under the statutory scheme, a jury could, using all the evidence, find that *mens rea* is missing and acquit defendant, *or* find that *mens rea* has been established, but that defendant was unable to conform his conduct to the requirements of the law. (See *Hightower*, 172 Ill. App. 3d at 686-87.) Accordingly, we hold that section 6—2(e), placing the burden of proving insanity on defendant and requiring that the jury be instructed to first determine whether the State met its burden of proving defendant guilty beyond a reasonable doubt before considering whether defendant sustained his burden of proving insanity, is constitutional.

■ Defendant next contends that the trial court erred in refusing to permit him to deliver the final closing argument. Defendant argues that because he was required to prove the defense of insanity by a preponderance of the evidence, he should have been allowed to open and close final arguments. We disagree.

This argument was recently rejected in *People v. Fields* (1988), 170 Ill. App. 3d 1, 17-18. As that court noted, the defendant's argument "fail[ed] to acknowledge the distinction between what is at issue and what must be proved." (170 Ill. App. 3d at 17.) The court reiter-

ated the general rule that the right to open and close is coexistent with the burden of proof, and where the plaintiff has anything to prove in order to secure a verdict, the right to open and close belongs to him. (170 Ill. App. 3d at 17; see also *Liptak v. Security Benefit Association* (1932), 350 Ill. 614, 618.) In *Liptak*, the court held that the right to open and close in that action properly belonged to the *defendant* since the defendant in that action admitted the plaintiff's case and the only controversy between the parties was raised by the defendant's affirmative defense. (*Liptak*, 350 Ill. at 617-18.) The *Fields* court distinguished *Liptak*, also cited by defendant in the instant action, on the basis that the plaintiff in *Liptak* had no burden of proof and the defendant had filed a special plea on which it had the burden, while in *Fields*, the State was required to prove each element of its case beyond a reasonable doubt. *Fields*, 170 Ill. App. 3d at 17; see also *People v. Williams* (1983), 97 Ill. 2d 252, 302-03; *National Bank v. Olson* (1986), 143 Ill. App. 3d 965, 969.

*Liptak* is similarly distinguishable from the instant action. Notwithstanding defendant's insanity defense and statutory obligation to prove that defense by a preponderance of the evidence, the State was not relieved of *first* proving defendant guilty beyond a reasonable doubt. (See Ill. Rev. Stat. 1985, ch. 38, par. 6—2(e); see also *Fields*, 170 Ill. App. 3d at 17.) Thus, because the State bore the primary burden of proof in this case, the trial court's decision was not in error.

■ Defendant next contends that the trial court erred in failing to provide the jury with a special verdict form of guilty but mentally ill. Defendant argues that the court was *required* by section 115—4(j) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—4(j)) to provide such a form notwithstanding defendant's failure to tender it. We disagree.

Section 115—4(j) provides, in pertinent part:

"When the affirmative defense of insanity has been presented during the trial, the court, *where warranted by the evidence*, shall also provide the jury with a special verdict form of guilty but mentally ill, as to each offense charged ***." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 115—4(j).

Although defendant argues that the legislature's use of the word "shall" in this provision indicates a mandatory obligation (see *People v. Youngbey* (1980), 82 Ill. 2d 556, 562 (word "shall" indicates a mandatory obligation unless the context indicates otherwise)), one recent case has recognized the trial court's discretion to give such a verdict form. (See *People v. Fierer* (1987), 151 Ill. App. 3d 649, 654, *aff'd* (1988), 124 Ill. 2d 176.) In *Fierer*, the defendant contended that the

trial court erred in submitting a guilty but mentally ill verdict form on the basis that the verdict was not warranted by the evidence. (151 Ill. App. 3d at 653.) The court noted that whether a guilty but mentally ill verdict form is warranted is not a decision to be made by the attorneys, but rather was a function of the trial court. (151 Ill. App. 3d at 653-54.) However, the court went on to state:

"*Although it is within the discretion of the trial court to submit this special verdict to the jury when it determines it is warranted by the evidence,* we would place the following caveat on reaching such a determination. When neither party propounds the submission of the GBMI verdict form, and in fact each opposes the giving of such an instruction, the trial court must exercise great care in tendering this special verdict form to the jury. As in this case, when neither party is of the opinion that the GBMI verdict is warranted by the evidence, a substantial basis must exist for its submission to the jury." (Emphasis added.) 151 Ill. App. 3d at 654.

The *Fierer* court's recognition that the trial court is entitled to exercise its discretion in determining whether the evidence warrants submission of the verdict form is confirmed by the very language of the statute noting the propriety of its submission *where warranted by the evidence.* (See Ill. Rev. Stat. 1985, ch. 38, par. 115—4(j).) Accordingly, we hold that the submission of a special verdict form of guilty but mentally ill is discretionary with the court, and the trial court's failure to provide such a form in the instant action where it was not requested by either party was not an abuse of that discretion.

■■ Defendant next presents four arguments challenging the constitutionality of the Habitual Criminal Act (Act) (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1 *et seq.*). Defendant contends that the Act is unconstitutional in that it (1) was enacted in violation of article IV, section 8(d), of the Illinois Constitution because it was not read three times in the House of Representatives; (2) does not permit consideration of the offender's personal characteristics and seriousness of the offense in violation of the due process clause and eighth amendment of the United States Constitution; (3) places the sentencing discretion in the State's Attorney rather than the judiciary in violation of the separation of powers doctrine of the Illinois Constitution and eighth amendment of the United States Constitution; and (4) violates the provisions of the Illinois and United States Constitutions prohibiting *ex post facto* laws and double jeopardy. Each of these arguments has been addressed and rejected in numerous appellate court decisions. (See *People v. Sims* (1987), 166 Ill. App. 3d 289, 302-03 (compilation of cases

upholding the constitutionality of the Act).) Most recently, this court adopted these holdings and rejected the identical four challenges presented here. (See *People v. Westefer* (1988), 169 Ill. App. 3d 59, 64-65.) Defendant's contentions do not raise new theories nor present compelling arguments for this court to retreat from *Westefer* or the numerous other decisions finding the Act constitutional. Accordingly, we find defendant's constitutional challenges to the Act to be without merit.

■ Defendant next contends that he cannot stand convicted of both aggravated kidnaping and aggravated criminal sexual assault on the basis that the crimes arose from the "same physical acts" and require proof of identical elements. Thus, defendant argues that his conviction for the less serious offense, in this case aggravated kidnaping, must be vacated. We agree.

In *People v. King* (1977), 66 Ill. 2d 551, 566, cited by defendant, our supreme court held that multiple convictions cannot stand where they are carved from the same physical act. In that case, the court noted that because the offenses of rape and burglary were based on separate acts, each requiring proof of a different element, convictions for both were proper. (66 Ill. 2d at 566; see also *People v. Pugh* (1987), 162 Ill. App. 3d 1030, 1035-36; *People v. Williams* (1987), 155 Ill. App. 3d 332, 339.) In *Pugh*, the court rejected the defendant's argument that his convictions for aggravated battery and aggravated kidnaping violated the one-act-one-crime principle set forth in *King*. (*Pugh*, 162 Ill. App. 3d at 1035-36.) In that case, the felony underlying the aggravated kidnaping charge was aggravated battery; however, the aggravated battery was not based on the kidnaping, but rather on the commission of a battery while on a public way. (162 Ill. App. 3d at 1032.) Thus, the court held that each conviction had a different factual basis requiring proof of a different element. (162 Ill. App. 3d at 1035-36.) Similarly, in *Williams*, the defendant's convictions for armed violence and aggravated battery were both permitted to stand. (*Williams*, 155 Ill. App. 3d at 339.) In that case, the defendant was convicted of armed violence in that he stabbed the victim causing her great bodily harm, and aggravated battery in that he stabbed the victim and struck her about the face causing her great bodily harm. (155 Ill. App. 3d at 337.) The court held that since the aggravated battery charge, in addition to alleging the stabbing, *also alleged the defendant's conduct of striking the victim about the face*, that charge alleged an act separate from that supporting the armed violence charge. 155 Ill. App. 3d at 339.

The instant action presents an apparently unique factual situation

where the commission of two separate and independent crimes have been combined by the State to enhance each crime to its aggravated version and thereby increase the penalty available for each. Kidnaping has been enhanced to aggravated kidnaping, as was charged in the instant action, by alleging that defendant kidnaped Marlene by knowingly and secretly confining her against her will while committing a second felony, specifically, criminal sexual assault through an act of sexual penetration against her will. (See Ill. Rev. Stat. 1985, ch. 38, par. 10—2(a)(3).) Criminal sexual assault has been enhanced to aggravated criminal sexual assault, as was charged in the instant action, by alleging that defendant committed a criminal sexual assault upon Marlene through an act of sexual penetration against her will while committing a second felony, specifically, kidnaping her by knowingly and secretly confining her against her will. (See Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(4).) Thus, given the form of the charging instruments and the predicate felony upon which each aggravated crime is based, it becomes obvious that proof of identical elements was necessary for convictions of both crimes. Indeed, the indictment charging defendant with aggravated kidnaping states that he committed that offense by "knowingly and secretly confin[ing] Marlene Lindemann against her will and by the use of force or threat of force committed an act of sexual penetration with [her]." Similarly, the indictment charging defendant with aggravated criminal sexual assault states that "during the commission of the offense of kidnaping [he] knowingly and by the threat of force, committed an act of sexual penetration with Marlene Lindemann."

To the extent that the proofs and the acts relied upon to sustain these convictions are the same, this case is like *People v. Williams* (1986), 143 Ill. App. 3d 658. In *Williams*, the Appellate Court for the First District, citing *King*, accepted the defendant's argument that his conviction for armed violence should be vacated since the armed violence conviction and a second conviction for armed robbery arose out of the same physical act. (*Williams*, 143 Ill. App. 3d at 665.) In that case, the defendant stole the victim's car and money while armed with a gun. (143 Ill. App. 3d at 660.) In reaching its decision, the court disagreed with the State's argument that theft of the car and theft of the money constituted separate acts. (143 Ill. App. 3d at 665.) In ruling that the defendant's conduct constituted a single act, the court noted, among other things, that the charging instruments for both armed violence and armed robbery contained identical allegations. (143 Ill. App. 3d at 666.) The informations charging both armed violence and armed robbery alleged that the defendant took the vic-

tim's car and money from her person or presence while armed with a gun and by the use of force or imminent use of force. (143 Ill. App. 3d at 666.) Thus, the court concluded that the form of the charging instruments evinced an intent by the State to treat the defendant's conduct as a single act. 143 Ill. App. 3d at 666.

Similarly, in the instant action, the State has based the aggravated criminal sexual assault on defendant's commission of the same felonies (criminal sexual assault through sexual penetration against the victim's will coupled with kidnaping by knowingly and secretly confining the victim against her will) that underlie the charge for aggravated kidnaping. Thus, unlike *Pugh* and this court's decision in *Williams*, convictions for both require proof of the same facts. This form of charging constitutes a double aggravation for the same conduct. We note that use of a second felony to enhance a crime to its aggravated version and thereby enhance the applicable penalty was intended to deter, among other things, the commission of two felonies at the same time. (See *People v. Scott* (1977), 45 Ill. App. 3d 487, 491, *aff'd* (1977), 69 Ill. 2d 85.) While a defendant may properly be convicted of both the aggravated crime and the second felony underlying that crime (see *Pugh*, 162 Ill. App. 3d at 1035-36; *Scott*, 45 Ill. App. 3d at 491), permitting the State to turn around and use the aggravated crime to enhance the second felony would create two aggravations and constitute a double enhancement of the penalty. We do not believe such a result was intended. Therefore, we hold that only one aggravation based on a combination of the same felonies is permitted.

Accordingly, defendant's conviction for aggravated kidnaping is vacated. We note that defendant does not seek to be resentenced on the surviving convictions, and we agree with the State that such an action is unnecessary in this case. However, we further note that defendant stands convicted of kidnaping, an offense for which he was not sentenced on the basis that it was a lesser included offense of aggravated kidnaping. Since we have vacated the latter conviction, defendant may now be sentenced on the kidnaping conviction.

■■ Defendant finally contends that the trial court erred in entering judgment and sentencing him on two convictions for home invasion where he entered only one dwelling. This court has previously held that a defendant can stand convicted of only one count of home invasion where there was only one entry regardless of the number of victims. (*People v. Parker* (1988), 166 Ill. App. 3d 123, 130; see also *People v. Yarbrough* (1987), 156 Ill. App. 3d 643, 646; *People v. Ammons* (1983), 120 Ill. App. 3d 855, 861.) We decline the State's invitation to depart from these holdings. Accordingly, defendant's convic-

tion on count V of the indictment for home invasion is hereby vacated. We note here, as we did above, that defendant does not seek to be resentenced on the surviving convictions, and we agree with the State that such an action is unnecessary in this case.

For the reasons set forth above, the judgments of the circuit court of Du Page County are affirmed in part. Defendant's convictions for aggravated kidnaping and on count V of the indictment for home invasion are vacated. This cause is remanded solely for the purpose of imposing sentence on defendant's conviction for kidnaping.

Affirmed in part, vacated in part, and remanded with directions.

DUNN and NASH, JJ., concur.